ZAINEY, J.
NOVEMBER 30, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALK HAYDEL & ASSOCIATES, INC. | CIVIL ACTION |
| VERSUS | NO: 05-1618 |
| COASTAL POWER & PRODUCTION CO., ET AL. | SECTION: "A" (4) |

<u>ORDER</u>

Before the Court is a **Motion to Dismiss (Rec. Doc. 8)** filed by Winston & Strawn, LLP ("W & S"). Latin American Energy Development, Inc. d/b/a Delasa ("Delasa") opposes the motion. The motion, set for hearing on June 15, 2005, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is DENIED.

**I.   <u>BACKGROUND</u>**

In early 1994, co-developers and partners Delasa, La Casa Castro, UTDC, and IEC formed a joint venture to build a power plant in El Salvador. Delasa claims that UTDC retained Paul Abramson, a

partner with W & S, to represent the joint venture in the drafting of certain agreements between the parties.  (3d Party Demand ¶ 3). UTDC was succeeded in the project by Trigen.  Trigen later withdrew from the joint venture and Tenneco joined the venture "step[ping] into Trigen's shoes."  (Id. ¶ 7).  Delasa asserts that Abramson suggested Tenneco as a substitute player and that he further failed to disclose to the joint venturers that he had a long-standing relationship with Tenneco.  (Id. ¶¶ 7 & 8).  According to Delasa, Tenneco had paid Abramson to find ways to further its reach into Latin American.  (Id. ¶ 8).

Delasa claims that all of the joint venturers were "technically being represented" by Abramson at a meeting in Houston, Texas when Tenneco was offered Trigen's position in the project, (Id. ¶ 11), and that Abramson continued to represent all parties as the negotiations for Trigen's withdrawal and Tenneco's entry continued.  Delasa asserts that Trigen only had a 75 percent stake in the venture and that the original partners intended for Tenneco to merely assume that 75 percent portion.  However, Delasa asserts that Tenneco later claimed 100 percent ownership of the project based upon a Release that Delasa had signed.  Allegedly, Abramson had prepared that Release and had assured Delasa that the document would not deprive Delasa of its interests in the project. (Id. ¶ 23).  Delasa claims that Abramson had a fiduciary obligation to the joint venture and that Abramson breached that

2

fiduciary duty or committed fraud.  (Id. ¶ 36).  Delasa claims that W & S is liable for fraudulently orchestrating the denial of Delasa's interest in the project.  (Id.).

Delasa filed a 2nd Amended Answer With Cross Claim and Third Party Demand which contained *inter alia* a third party claim against W & S.[1]  W & S now moves to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).  In particular, W & S argues that it does not have the requisite contacts with the State of Louisiana to afford this Court's exercise of personal jurisdiction over the firm in this action.  Additionally, W & S asserts that it has not been properly served with process and should therefore be dismissed from the action for insufficiency of service of process.

## II.   DISCUSSION

### A.   The Parties' Contentions

W & S argues that Delasa cannot establish that the exercise of jurisdiction over W & S satisfies the requirements of either specific or general jurisdiction.  Although W & S denies the existence of an attorney-client relationship, it asserts that the existence of that relationship alone is insufficient to establish jurisdiction over a non-resident attorney or law firm.  Regarding

---

[1] The convoluted procedural posture of the case is not relevant to the issues currently before the Court and has therefore been omitted in the interest of brevity.

service, W & S argues that Delasa did not provide a copy of the original petition but rather only sent copies of the Third Party Demand and Delasa's Answers thereto.  Thus, according to W & S, service was not proper.

In opposition, Delasa argues that the other defendants made identical arguments challenging personal jurisdiction yet the state court judge rejected those arguments.  Delasa argues that the case for specific personal jurisdiction against W & S is even stronger than it was against the other defendants because Abramson attended a meeting in New Orleans where proprietary information was divulged to Tenneco.  Further, Abramson and W & S sent thousands of documents to and from New Orleans in conjunction with that meeting.

Delasa asserts that where the intentional tort of fraud is alleged a single phone call or fax is sufficient to support personal jurisdiction, as is other intentional conduct directed to the forum state.  Delasa distinguishes those cases where an attorney is accused solely of negligence or legal malpractice as opposed to intentional fraudulent conduct.

In reply, W & S argues that none of the contracts that W & S worked on were drafted or confected in Louisiana.  W & S denies that any W & S representative traveled to Louisiana in conjunction with the power plant project.  W & S asserts that Delasa is confusing the contacts that W & S's clients had with Delasa with

4

those of the law firm itself.  W & S devotes much of its reply memorandum to attacking Delasa's assertion that an attorney client relationship existed between W & S and Delasa.

**B.    Law & Analysis**

Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the federal court sits. Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V., 149 F.3d 413, 418 (5th Cir. 2001) (citing Fed. R. Civ. P. 4(k)(1)).  For a federal district court in a particular state to exercise personal jurisdiction over a defendant, that exercise of jurisdiction must first be proper under that state's long-arm statute.  Id.  If the state long-arm statute allows the district court to exercise personal jurisdiction, the exercise of personal jurisdiction must also be proper under the Due Process Clause of the Fourteenth Amendment.  Id.  Because Louisiana's long-arm statute extends to the limits of due process, federal courts sitting in Louisiana need only decide whether subjecting the defendant to suit in Louisiana would offend the Due Process Clause of the 14th Amendment.  Dickson Marine Inc., v. Panalpina, Inc., 179 F.3d 331, 335 (5th Cir. 1999) (citing La. R.S. 13:3201(B)).  Thus, the two part inquiry collapses into a single determination.

Due process will not be offended if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Id. at 336 (quoting International Shoe v. Washington, 326 U.S. 310, 66 S. Ct. 154, 60 L. Ed. 95 (1945)).  When an action "arises out of" a defendant's contacts with the forum state, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction.  Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683 (1977)).  This type of jurisdiction is commonly referred to as "specific jurisdiction."  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8, 80 L. Ed. 2d 404 (1984)).

When a defendant has "continuous corporate operations" within a state that are so substantial and of such a nature as to justify suit against a foreign defendant on causes of action arising from dealings entirely distinct from those activities, the court is said to have "general jurisdiction."  Dickson Marine, 179 F.3d at 336 (citing International Shoe, 326 U.S. at 318, 66 S. Ct. at 159).  The contacts necessary to confer general jurisdiction must be "continuous and systematic."  Id. (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S. Ct. 413, 418, 96 L.

Ed. 485 (1952)).  The continuous and systematic test is a difficult one to meet because it requires *extensive* contacts between a defendant and a forum.  Submersible Systems, 249 F.3d at 419 (citing 16 James W. Moore, et al., Moore's Federal Practice ¶108.41[3] (3d ed. 1999)).

When addressing the issue of personal jurisdiction via a motion to dismiss, the Court must accept as true all uncontroverted allegations in the complaint and resolve in Delasa's favor all factual conflicts posed by the affidavits.  Trinity Indus., Inc. v. Myers & Assocs., Ltd., 41 F.3d 229, 230 (5th Cir. 1995) (citing Wilson v. Belin, 20 F.3d 644 (5th Cir. 1994)).  Because the Court is not conducting an evidentiary hearing in conjunction with this motion to dismiss, Delasa need only present a prima facie case of personal jurisdiction.  Id.  If the Court were to hold an evidentiary hearing then Delasa would be required to demonstrate jurisdiction by a preponderance of the evidence.  We're Talkin' Mardi Gras, LLC v. Davis, 192 F. Supp. 2d 635, 637 (E.D. La. 2002) (citing Felch v. Transportes Lar-Mex, 92 F.3d 320, 326 (5th Cir. 1996)).

At the outset the Court is convinced that for purposes of the instant motion Delasa is entitled to the *assumption* that an

7

attorney client relationship existed between Abramson and Delasa.[2] The Court must resolve all factual conflicts in Delasa's favor, and Abramson had confirmed in writing that W & S was "engaged to represent all four parties in their negotiations with others." (W & S fax of 3/7/94, Reply Exh. A). The meaning of this statement is a question for another day but for purposes of the instant motion the Court will *assume* an attorney client relationship between Delasa and W & S.

Of course the law is well-settled that the bare existence of an attorney client relationship is not sufficient to establish jurisdiction over a non-resident attorney or law firm. Trinity, 41 F.3d at 230. Instead, the record must reflect a factual scenario sufficient to support an inference that the defendant "purposely availed" himself of doing business in the forum state. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)). The Court has gleaned the following from the parties' affidavits and other evidence.

W & S is a limited liability partnership organized under the laws of Illinois with its principal place of business in Illinois. W & S has no offices in Louisiana, owns no real property in

---

[2] Abramson is not a defendant in this lawsuit yet neither party has made a distinction between W & S's contacts with Louisiana and Abramson's contacts with Louisiana. The Court will therefore refer to Abramson and W & S interchangeably.

Louisiana, has no funds on deposit in Louisiana, has no agent for service of process in Louisiana, and none of its employees live in Louisiana. From February 1994 through June 1994, the time frame in which many of the pertinent events occurred, W & S derived less than one hundredth of one percent (.01 %) of its gross billings and gross revenue from services provided and billed to clients with Louisiana billing addresses. Abramson, who is not a party to this lawsuit, was a partner at the firm.

Abramson is admitted to practice law in New York and Illinois. From 1990 to 1996 he practiced corporate and finance law in W & S's New York office. Abramson has never lived in Louisiana, owns no property in Louisiana, has never been employed in Louisiana, and has never been retained as legal counsel for any other Louisiana individual or company.

Clearly, based on the foregoing, the Court cannot exercise general personal jurisdiction over W & S because it has no continuous and systematic contacts with the state of Louisiana. Likewise, there is no evidence to suggest that Abramson has had continuous and systematic contacts with the state of Louisiana. Thus, the Court can exercise jurisdiction over this matter only if specific jurisdiction applies. In other words, the Court must examine the relationship among W & S, Louisiana, and this litigation to determine whether the Court's exercise of

9

jurisdiction over W & S would comport with principles of due process.

The evidence reveals the following regarding W & S and Abramson's contacts with Louisiana. Abramson visited Louisiana once during the time period of February 1994 through June 1994 to attend the annual Cogeneration and Independent Power Conference held in New Orleans. W & S hosted and Abramson attended a golf outing in New Orleans in conjunction with the conference. According to Abramson, the conference was widely attended by those professionals who specialize in the development, financing, ownership, and operation of power plants. Abramson states that neither he nor W & S invited any Delasa representatives to the golf outing and he did not discuss the project with any guest at the outing.

Delasa is a Louisiana corporation with its principal place of business in New Orleans. John Wheelock, Delasa's president, attended the energy conference in New Orleans and attests that W & S invited all of the joint venturers to attend. Wheelock does not state, however, who in particular at W & S invited him to the conference. Wheelock asserts that Abramson encouraged the venturers to attend the conference in order to meet executives of Tenneco who might be interested in replacing Trigen on the project. The group discussed the project at length with Tenneco in New

10

Orleans where critical and confidential information was shared with Tenneco under the guidance of W & S.  Wheelock claims that as a result of the meeting in New Orleans Tenneco agreed to enter the joint venture.  In the months to follow W & S sent hundreds of documents to Wheelock in New Orleans and made numerous phone calls to him as well.  Wheelock states that in April 1994 Abramson sent him a copy of a proposed agreement wherein Delasa would receive 10 percent of the project and Trigen, or its successor, would receive 75 percent.  However, in May 1994 when the parties were in El Salvador, Wheelock claims that Abramson obtained his signature on the Release that ultimately deprived Delasa of its interests in the project.

W & S never billed Delasa in Louisiana for legal services in connection with the project.  Abramson states that all of his legal work in conjunction with the project was performed outside of Louisiana although he did convey information to and receive comments from Delasa regarding certain agreements.  No other W & S employee performed legal services relating to the project in Louisiana.  Abramson never traveled to Louisiana in conjunction with the project.

The foregoing contacts fail to demonstrate that this Court can validly exercise jurisdiction over W & S.  First of all, the law is clear that even extensive telephonic and written communication

11

between the nonresident defendant and a resident of the forum will rarely be sufficient to create a basis for specific jurisdiction even where the parties eventually confect a contractual relationship.  See Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986).  Second, the only other Louisiana connection to this litigation was that Delasa's representatives met Tenneco representatives in New Orleans while attending the conference.  The parties began discussing the project in New Orleans but no legally binding commitments were made in New Orleans and no contracts were signed in New Orleans.  In fact, the Release that Delasa claims ultimately deprived it of its interests in the project was signed in El Salvador.  Given the complexity of the project, a single business social in New Orleans, particularly one that was widely attended by those in the energy business, is of meager significance at best.

    However, Delasa argues that W & S is subject to jurisdiction in Louisiana because Abramson engaged in a methodical plan to defraud Delasa here in Louisiana.  Delasa asserts that Abramson committed this fraud through a series of meetings, numerous telephone conversations, letters, and faxes.  Delasa relies upon Calder v. Jones, 465 U.S. 783 (1984), for the proposition that a non-resident defendant's intentional tortious actions directed to the forum can subject him to jurisdiction in the forum state when

12

he knows that his conduct will have a potentially devastating impact upon a resident of the forum.

In <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208 (5th Cir. 1999), the Fifth Circuit applied the <u>Calder</u> principles to a German attorney being sued in Texas.  The attorney had sent letters and faxes to his client in Texas, in addition to making phone calls, and the fraudulent content of those communications was found to give rise to jurisdiction in Texas.  <u>Id.</u> at 213.  The Fifth Circuit concluded that when the actual content of communications with a forum gives rise to an intentional tort then this alone constitutes purposeful availment.  <u>Id.</u>

Delasa's Exhibit 3 to its opposition is a log of various correspondence that it and others received in conjunction with the project.  Many of those documents were not sent by W & S or Abramson and therefore have little or no relevance to the issues currently before the Court.  Further, the log does not distinguish between those documents that were directed to Delasa in Louisiana and those that were not.  Again the Court has no use for documents sent to other entities outside of Louisiana.  Exhibit 3 was obviously intended to demonstrate the volume of communications that transpired in conjunction with the project but even a voluminous amount of communications is insufficient to create jurisdiction.

Nevertheless, some of the communications are clearly from W &

S to Wheelock and the crux of Delasa's claim is that Abramson failed to disclose to the venturers, whom he is alleged to have represented, his close relationship with Tenneco and his apparent conflict of interest.  In Wien Air, the Fifth Circuit specifically stated that when a claim against a lawyer arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of omissions to the forum state.  195 F.3d at 213.  In such a situation jurisdiction can be exercised.  See id. (citing Diamond Mortgage Corp. v. Sugar, 913 F.2d 1233 (7th Cir. 1990)).

 Based on the foregoing language in Wien Air the Court is persuaded that Delasa's allegations amount to a prima facie case of personal jurisdiction albeit by the narrowest of margins.  In Wien Air and in Diamond Mortgage, which the Fifth Circuit cited with approval in Wien Air, the record contained evidence that the defendant attorneys had communicated substantive legal advice to the client in the forum while nevertheless failing to disclose a conflict.  In contrast, the Court has seen no evidence of communications from Abramson and/or W & S directed to Delasa in Louisiana that constitute legal advice.  In fact Exhibit 3 suggests that much of the correspondence that Abramson directed to Louisiana

was in the nature of transmittal letters and faxes. Further, in <u>Wien Air</u> the communications directed at the forum contained affirmative fraudulent misrepresentations. In the instant case the Court has seen no such evidence of fraudulent information directed to Delasa in Louisiana. Nevertheless, a prima facie case is built on allegations.

Because Delasa has presented a prima facie case of personal jurisdiction the Court will deny W & S's motion at this time, however, this denial will be without prejudice to W & S's right to move for an evidentiary hearing on the issue of personal jurisdiction. At any such hearing Delasa will face a heightened burden because Delasa will no longer be allowed to rest on mere allegations of fraudulent conduct.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 8)** filed by Winston & Strawn, LLP should be and hereby is **DENIED**.

* * * * * * * * *