WALK HAYDEL & ASSOCIATES, INC.                    CIVIL ACTION

VERSUS                                            NO. 05-1618 c/w
                                                  06-911

COASTAL POWER & PRODUCTION                        SECTION "A"(4)
CO., ET AL.

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc.
335)** filed by Winston & Strawn LLP ("Winston").  ESI, Inc.
("ESI") opposes the motion.  The motion, set for hearing on July
22, 2009, is before the Court on the briefs without oral
argument.[1]  For the reasons that follow, the motion is DENIED.

## I.   BACKGROUND[2]

Latin American Energy Development, Inc. d/b/a Delasa and ESI
have been involved in litigation pertaining to their claim of
ownership in an electric power plant in El Salvador for many
years.  Delasa has always claimed a 10 percent ownership interest
in the plant and its profits, subject to ESI's 2.5 percent
interest, which it acquired from Delasa by assignment.  Delasa

---

[1] Winston requested oral argument but the Court is not
persuaded that oral argument would be helpful in light of the
objective evidence.  ESI also requested oral argument but its
request was untimely under the Local Rules.  See L.R. 78.1E.

[2] A more detailed factual and procedural background is
contained in the Court's prior rulings entered into the record at
documents 40, 105, and 158.

and ESI litigated their ownership claims for years--ESI's chosen
forum was the Southern District of New York and Delasa pursued
its claims in a Louisiana state court.  Winston was never a named
party to those proceedings and both the New York and Louisiana
litigation ended in settlement.

In 1994, prior to the commencement of any litigation and
while negotiations with El Salvadoran officials were still
ongoing, attorney Paul Abramson was retained by UTDC/Trigen to
draft various documents associated with the project, including a
construction contract, the PPA, and a joint venture agreement
between the co-developers.  Abramson was a New York-based partner
with the Winston & Strawn LLP law firm.  Although Winston was
hired to represent UTDC/Trigen, Abramson did understand that his
firm had been engaged to represent all of the four joint venture
partners in their negotiations with others.  (Rec. Doc. 357 Exh.
E).

After the pertinent project documents were executed, Tenneco
assumed UTDC/Trigen's role in the project.  Tenneco had been
Abramson's client on unrelated matters for some time.  It is
undisputed that after the project documents were executed,
Tenneco relied upon a release drafted by Abramson and signed by
Delasa to claim 100 percent ownership of the project to the
exclusion of Delasa and ESI.  It is also undisputed that after

Tenneco assumed Trigen's role in the project, Abramson began to represent Tenneco in conjunction with the project. A privilege log produced in the New York litigation strongly suggests that Abramson assisted Tenneco's legal department in drafting a response to a demand letter sent by Delasa's attorney. (Rec. Doc. 357 Exh. H at 4-5). In that response, Tenneco relied upon the release that Abramson had drafted and that Delasa had signed as the basis for denying Delasa's, and thereby ESI's, ownership interest in the project. (Rec. Doc. 357 Exh. G).

During the course of the New York litigation, ESI made allegations that Abramson had counseled Tenneco on how to exclude ESI from the project and that in doing so he acted materially adverse to the interests of his former clients, Delasa and ESI. (Rec. Doc. 335 Exh. A). ESI sought discovery on this issue but the district judge upheld Tenneco's claim of privilege. (Rec. Doc. 335 Exh. B). According to ESI, it then pursued its claims against the existing parties to the lawsuit without the benefit of any evidence of fraud, wrongdoing, or misconduct by Abramson or Winston.

In 2004, Delasa sued W & S alleging that it breached duties owed to Delasa by assisting Tenneco and others to deny Delasa its rightful interest in the plant. Delasa claimed that it only learned years later that Abramson had in fact assisted Tenneco in

excluding Delasa and ESI from the project back in 1994.  That
suit was removed to this Court.  On November 18, 2008, the Court
allowed ESI to intervene in the lawsuit as a plaintiff.  (Rec.
Doc. 222).  Like Delasa, ESI claims that Abramson breached a duty
to refrain from acting adversely to his former clients'
interests.

Winston now moves for summary judgment against ESI arguing
that ESI's claims are barred by the settlement agreement that ESI
entered into in the New York litigation.

III. **DISCUSSION**

Winston argues that ESI's claims in this action are barred
by the release that it executed when it settled the New York
litigation.  Winston points out that it served as outside counsel
to Trigen and Tenneco with respect to the project and it argues
that the broad language of the release included any claims
against Tenneco and Trigen *as well as their attorneys*.  Winston
contends that the claims asserted in this lawsuit are clearly
encompassed within the description of compromised claims, and
that ESI cannot deny that it knew about its claims against
Winston before it compromised the other claims in the New York
lawsuit.  Winston points out that the settlement agreement
specifically enumerates those claims that are preserved and the

4

claims against Winston are not mentioned.

In opposition, ESI argues that W&S was not expressly released in the settlement agreement and that the purpose of the agreement was not to release non-parties like Winston who paid no consideration for the discharge of liability.  ESI stresses that Abramson and Winston served as project counsel for all of the developers, including ESI, and in that context Abramson was ESI's attorney.  ESI contends that Winston's reading of the attorney releases is unreasonable and strained when one considers that ESI's claims against Winston are based on Abramson's representation of ESI as opposed to Trigen or Tenneco.  ESI avers that its claim against Winston is not expressly preserved in the settlement agreement because the list of exceptions was limited to those claims that were actually asserted in the New York litigation.

The parties dispute whether ESI or Winston bears the burden of proof with respect to whether ESI's claims are barred by the New York settlement agreement.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  <u>TIG Ins. Co. v. Sedgwick James</u>,

276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  <u>Id.</u> (citing Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. <u>Id.</u> (citing <u>SEC v. Recile</u>, 10 F.3d 1093, 1097 (5th Cir. 1993)).

   In early 2002, ESI settled its New York lawsuit by executing a Settlement and Release Agreement ("the Release") (Rec. Doc.335 Exh. C).  ESI received nearly $2.5 million dollars in settlement of its claims and the funds were paid by La Casa Castro, Tenneco, and Trigen.  The parties agree that the Release is governed by New York law pursuant to a choice of law provision.  (Rec. Doc.

335 Exh. C at 9).[3]

A settlement agreement is a contract and to form a valid contract there must be an offer, acceptance, consideration, mutual assent, and intent to be bound.  Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc., No. 06-2652, 2008 WL 5169495 (S.D.N.Y. Dec. 9, 2008) (citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004)).  An enforceable contract requires that the parties have a "meeting of the minds," and "if there is no meeting of the minds on all essential terms, there is no contract."  Id. (quoting Schurr v. Austin Galleries, Inc., 719 F.2d 571, 576 (2d Cir. 1983)).  Whether there has been a meeting of the minds on all essential terms is a question of fact that must be resolved by analyzing the totality of the circumstances. Id. (citing U.S. v. Sforza, 326 F.3d 107, 116 (2d Cir. 2003)).

As noted above, Winston was never a party in the New York litigation.  Therefore, it was not a signatory to the Release-- nor was its name expressly mentioned in the Release.  However, the agreement contains the following broad release language upon

---

[3] The Release also mandates that the Southern District of New York will be the exclusive forum for any litigation relating to the Release, including enforcement thereof.  (Rec. Doc. 335 Exh. C at 9).  However, the parties have agreed to waive this provision and have further agreed that this Court will determine the enforceability of the Release with respect to ESI's claims in the instant litigation.  (Rec. Doc. 335 Memo. at 9 n.3).

which Winston relies for its argument:

> ESI and its present and former attorneys, agents, employees, partners, parents, principals, subsidiaries, successors, assigns, representatives, and trustees do hereby forever and fully release acquit, waive, relinquish, discharge and exonerate Coastal, LCC, ***Trigen, and Tenneco and their*** parents, subsidiaries, officers, principals, directors, employees, agents, ***attorneys***, successors, and assigns from any and all actual and alleged claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, suits, matters, and issues of any kind of nature whatsoever, contingent or absolute, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, that have been or could have been asserted in the Litigation or in any court, tribunal, or proceeding, whether legal, equitable or otherwise, which have arisen or could have arisen, arise now, or relate in any manner to the allegations, facts, events, transactions, acts, occurrences, statements, representations, omissions, or any other matter, thing, or cause whatsoever or any series thereof, embraced, involved, set forth or otherwise related, directly or indirectly to any of the complaints or cross-claims filed at any time in this Litigation and/or that arise out of or related to the Settled Claims and/or the Nejapa Power Project, as those terms are defined in the Settlement and Release Agreement, except claims arising from the enforcement of the Settlement and Release Agreement, which are specifically reserved and are not released by this provision.

(Rec. Doc. 335 Exh. C at 5 ¶ 4(a) (emphasis added)).   Abramson had undisputedly represented both Trigen and Tenneco during the project development phase, so Winston argues that as a former attorney to these entities it is entitled to a discharge under the Release.   Winston adds that New York law does not require that a release identify by name the persons or entities to be discharged or that a discharged party have paid any consideration in the bargain.

8

The Court has carefully reviewed and considered the parties'
submissions and concludes that ESI's arguments are more
persuasive in light of the objective evidence.  First, this Court
does not agree with Winston's assertion that ESI has the burden
of proving that the Release did *not* discharge its claims against
Winston.  Winston cites New York law for the proposition that the
releasor has the burden of proof, <u>Calavano v. N.Y. City Health &
Hosps.</u>, 246 A.D.2d 317 (N.Y. App. Div. 1998), and if ESI were
attempting to bring claims against any other party to the Release
then ESI would be held to that burden.  Such was the case in
<u>Calavano</u>, <u>supra</u>, where the plaintiff sued the very party he had
previously released in conjunction with a prior injury.  But in
this case Winston was not a party to the New York litigation, it
paid nothing in settlement of a discharge, and it was not
expressly discharged in the Release.  It was in fact a complete
outsider vis à vis the settlement agreement, and while New York
law may not prohibit Winston from nevertheless having obtained a
discharge under the circumstances, it only makes legal sense that
Winston should bear the burden of proving its status as a
beneficiary under a document with which it had no involvement.

Second, it is not clear that the Release language,
notwithstanding its intended breadth, encompasses ESI's claims

against Winston in this litigation. Abramson and his firm did not represent Tenneco or Trigen in the New York litigation and it is unclear whether he represented them at all as of the signing of the Release. Thus, at the time the Release was executed, Abramson was either a "former" attorney to these two entities or an attorney working for Trigen or Tenneco but on matters unrelated to the New York litigation. No one can seriously contend that ESI or any party to the Release had any intention of discharging attorneys, who while retained by Trigen and Tenneco, were working on unrelated matters. And if Abramson was a "former" attorney when the Release was executed, then the Release is clearly ambiguous with respect to ESI's claims against Winston because the modifier "former" is not used with respect to Trigen and Tenneco's lawyers notwithstanding that the term is used elsewhere in the Release to clarify that ESI's *former* attorneys were also releasing their claims. (Rec. Doc. 335 Exh. C at 5 ¶ 4(a)).

Further, Winston's argument fails to recognize that ESI is suing Winston, not because it represented Tenneco in helping Tenneco to defeat ESI's ownership interest in the project, but rather because Winston did so having previously represented ESI as project counsel. The cornerstone of this case is ESI's

contention that Winston previously represented ESI because without such a prior relationship there would be no duty owed. Thus, ESI is suing its own former attorney in this case[4] and the Release does not suggest that ESI intended to release any claims against any of its own former counsel.  As ESI points out, if this were the case, Winston would simultaneously be a "releasor" and a "releasee" in the Release and such an interpretation is not reasonable.

For the foregoing reasons, the Court is not persuaded that Winston is entitled to summary judgment against ESI based on the terms of the Release.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 335)** filed by Winston & Strawn LLP is **DENIED**.

August 3, 2009

_____
UNITED STATES DISTRICT JUDGE

---

[4] The Court assumes *arguendo* that Abramson was a former attorney to ESI although the parties do not seem to dispute that Winston and Abramson might at one time have been ESI's attorney albeit in some very limited fashion.